NOT DESIGNATED FOR PUBLICATION

No. 118,330

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of R.D. and S.D.,
Minor Children.

MEMORANDUM OPINION

Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Opinion filed April 13, 2018.
Affirmed.

*BreAnne Hendricks Poe*, of Finch, Covington, and Boyd, Chtd., of Ottawa, for appellant natural
father.

*Stephen A. Hunting*, county attorney, for appellee.

Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.

PER CURIAM: Z.D. (Father) and B.D. (Mother) had two children, S.L.D., born in
2011, and R.R.D., born in 2012 (the Children). The district court adjudicated the Children
to be in need of care and approved a case plan for the parents with the stated goal of
reintegration. On the basis of Father's lack of progress, the district court found him unfit,
applying the unrebutted presumption of K.S.A. 2017 Supp. 38-2271 (a)(5) and factors set
forth in K.S.A. 2017 Supp. 38-2269(b) and (c), and found the unfitness unlikely to
change in the foreseeable future. The district court terminated his parental rights. Father
appeals; we find no error and affirm.

1

FACTS AND PROCEDURAL BACKGROUND

The process began on September 10, 2015, when the State filed petitions with the district court to find S.L.D. and R.R.D. to be children in need of care. The court placed the Children in temporary custody on September 14, 2015 and both parents later signed a no-contest stipulation in response to the allegations in the petitions. On November 12, 2015, the district court found the Children were in need of care. A case plan was established for eventual reintegration with the parents.

Between November 2015 and December 2016, Father took few steps toward completing his part of the case plan. The record shows he failed to appear personally at any of five scheduled hearings during that time—though his attorney appeared at most of them. At a hearing on November 10, 2016 (at which Father did not appear), the district court noted a year had passed since it found the Children were in need of care and Father had made little real progress on his case plan tasks. The court then set a first appearance hearing for termination of Father's parental rights. At that hearing, on December 20, 2016, Father finally appeared but declined to take a court-ordered drug test, later admitting he refused to take the drug test because it "was going to be dirty anyway." The following month, on January 23, 2017, the State filed a motion to terminate Father's parental rights.

At the termination hearing on March 28, 2017, the State presented Brittany Smith—KVC case manager for the Children—as its sole witness. Smith testified Father failed to complete 11 of 15 case plan tasks assigned to him. Specifically, she stated Father had completed only 12 of 48 required drug tests between May 2016 and February 2017, and the results of two of the 12 completed tests were positive for illegal drugs. And, although Father completed a Regional Alcohol and Drug Assessment Center (RADAC) evaluation, he failed "to engage in outpatient treatment," as recommended.

Similarly, after a psychological evaluation, Father failed to participate in recommended substance abuse treatment.

The case plan also called for Father to participate in a parenting course. According to Smith, the course typically consisted of 12 classes, of which Father completed only 5. A further requirement was for Father to "demonstrat[e] appropriate parenting skills during visitations [with the Children]." Smith testified Father had the opportunity to visit the Children "between September of 2015 and . . . up until July of 2016." Father "attended [the visits] regularly from September of 2015 to March of 2016," but apparently did not see the Children at all between March and July 2016, even though he had the opportunity to do so.

Additionally, Smith testified Father failed to provide her with employment documentation and was "not consistently" employed throughout the case. Though required to do so, Father did not complete a budget form until the morning of the termination hearing and attended only two of eight Circles program financial needs classes. Father had also failed to obtain "safe and drug free housing" and was homeless at the time of the hearing. And, although Father had pending burglary charges against him in Miami County, he failed to apprise Smith of these developments, contrary to the requirements of the case plan. Finally, Smith noted that Mother had a protection from abuse order against Father in Johnson County. She testified that although Father had made progress on some of the tasks, much of that progress did not occur until February 2017—after the State filed the motion to terminate his parental rights.

As their case manager, Smith also testified about the Children's "high needs." She said they have very high educational needs and mental health needs arising from past trauma. Smith described the Children as "very reactive and easily triggered with their behaviors and aggression towards each other." She concluded "[i]t would be very difficult to parent them if you're not consistent and reliable."

On the basis of these observations, Smith recommended Father's parental rights be terminated, explaining:

"The children have not had contact with him for a year and the children have expressed abuse that occurred by [Father] . . . And due to the lack of history of progress until recent[ly] [Father] is not a stable, reliable individual to care for these girls because of their high needs."

Father also testified at the hearing, controverting very little of Smith's testimony. Indeed, Father admitted he completed "[v]ery little" toward his case plan tasks in 2016 "due to [his] drug addiction." And when confronted with his incomplete case plan, Father freely admitted he "was ducking and dodging it." He maintained, however, that he had made progress on his case plan since the start of 2017, noting that he had not used methamphetamine since early January of that year—though on cross-examination, he admitted he spent most of January 2017 incarcerated and thus did not have access to drugs. Since his release from jail, Father stated he had worked on his case plan tasks, attended mental health and drug addiction classes, and had taken two jobs. Father concluded that his experience had taught him not to use methamphetamine and that he was "never going back."

Reviewing this evidence, the district court stated:

"Since February the testimony of father is that he has turned things around and that he believes that he's been able to correct his situation and is in essence asking the Court for another opportunity. In the Court's opinion the efforts of the father, although they appear to be appropriate, it's too little too late.

"And I say that from the standpoint that the motion to terminate or the father was aware that there was going to be a motion to terminate filed as early as the first part of November of last year. And he knew that it was going to be—he knew when he was here on December 20th what was going on. And yet he waited until—he waited till three months or a little over two months to actually start doing anything.

4

. . . .

"[T]here are too many indicators here that the efforts that [Father has made] during the basically the past two months, are only to try to avoid the Court terminating [his] parental rights today. And if the Court were to continue this matter the Court believes that [Father would] go right back to what had happened before.

. . . .

"[T]he efforts that [Father's] done so far although they may be commendable, they do not convince the Court that, number one, [Father is] in a place that the children—that [Father is] even close to a place where the children could be placed back with [him] or that [he] should be allowed visits with these children.

"Number two, the Court is not convinced that the efforts that [Father] made here recently are going to continue for the foreseeable future. The Court doesn't believe that they are."

The district court found the presumption of unfitness in K.S.A. 2017 Supp. 38-2271(a)(5) applied since the Children had been in an out-of-home placement for over a year and Father had failed to carry out an approved reintegration plan. The court also made the finding pursuant to K.S.A. 60-414 that the facts from which that presumption derived were probative on the question of unfitness; that the burden of rebutting the presumption was on Father; and that Father had failed to rebut the presumption.

The court further found clear and convincing evidence of unfitness through the following factors listed in K.S.A. 2017 Supp. 38-2269(b) and (c): the failure of reasonable efforts by KVC to rehabilitate the family; lack of effort by Father to adjust his circumstances, conduct, or conditions to meet the needs of the Children; failure by Father to carry out a reasonable plan approved by the court that was directed to reintegration of the Children; and failure by Father to maintain regular visitation or contact with the Children.

Finally, based on Father's failure to make any substantive progress on his case plan tasks until about two months before the termination hearing, the district court found

5

Father's conduct was unlikely to change in the foreseeable future and ordered his parental rights terminated.

Father timely appeals.

ANALYSIS

Father contends the district court failed to consider evidence that showed he was likely to make needed changes in the foreseeable future. He specifically argues the court "failed to consider [his] ability to have been able to stay clean [*sic*] and his ability to complete case plan goals for reintegration."

*Standard of Review*

To arrive at its conclusion terminating Father's rights, the district court had to find "by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2017 Supp. 38-2269(a). Our Supreme Court has established the corresponding standard for our review:

> "When an appellate court reviews a trial court's determination which is required to be based upon clear and convincing evidence, it considers whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found the determination to be highly probable." *In re B.D.-Y.*, 286 Kan. 686, Syl. ¶ 4, 187 P.3d 594 (2008).

*Did the district court consider Father's evidence for change in the foreseeable future?*

Father admits he "completed few case plan tasks in 2016," but asserts he "was completing what he could in 2017." He also maintains that foreseeable future—viewed

6

from the perspective of four- and six-year-old children—is a "much longer timeframe than that of a child at the age [of 11 or 12]." He concludes, therefore, that because he made some progress on his case plan starting in February 2017, the district court should have given him more time to complete his case plan goals, some of which involved the substance abuse part of his plan while others required renewed authorization for visits with the Children so he could show his ability to care for them. He argues that "[a] few additional months for Father to complete his case plan goals are entirely different perception for children at a younger age [*sic*]."

First, we are not persuaded by Father's contention that the "foreseeable future" for younger children, like his four and six year olds, is longer than for older children, thus giving him more time while the Children are in care to try to show he has become an appropriate parent. Father offers no support for that bald assertion, which flies in the face of the entire concept of "child's time" in these cases, which generally considers that *all* time is so critical to childhood development that competent parental involvement needs to be achieved sooner rather than later. When deciding whether a parent will remain unfit for the foreseeable future, the period of time must be considered from the child's perspective, not the parent's. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009).

Second, we see no failure by the district court to acknowledge the belated progress on which Father relies. That court, however, characterized such efforts as "appropriate," but "too little too late." Further, having heard the testimony, the district court was plainly unconvinced that Father's efforts in the run-up to the termination hearing would be sustained if more time were to be granted. Neither did the court accept the idea that Father was "even close" to the point where the children could be considered for placement with him or for resuming visits. Accordingly, the district court considered the evidence Father put forward and concluded the foreseeable future, as applied to these children, was too short for any further efforts by Father.

Father failed to make any meaningful progress on his case plan tasks for more than a year, doing so only when, as the district court noted, it became clear he could lose his children. Courts may consider a parent's past actions in determining future unfitness. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). Before February 2017, Father "ducked and dodged" his case plan assignments, and even passed up the opportunity to have supervised visits with the Children between March and July 2016. Only three months before the termination hearing, on December 20, 2016, Father refused a drug test, saying he would have tested positive for illegal drugs. Ideally, Father's recovery had indeed finally begun by the time of the termination hearing. But considering Father's conduct over the course of the case and viewing the evidence in the light most favorable to the State, a rational fact-finder could find it highly probable that Father would remain unfit as a parent for the foreseeable future.

We find no error in the district court's decision to terminate Father's parental rights.

Affirmed.